UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

DR. MARIA S. WILLIAMS                           CIVIL ACTION NO. _____

VERSUS                                          JUDGE: _____

THE HOSPITAL SERVICE DISTRICT                   MAGISTRATE-JUDGE: _____
OF WEST FELICIANA PARISH, LOUISIANA,
AND BOARD OF COMMISSIONERS OF
THE HOSPITAL SERVICE DISTRICT OF
WEST FELICIANA PARISH

**************************************************

## COMPLAINT

The Complaint of Dr. Maria Williams, a resident of the full age of majority of East Baton Rouge Parish, Louisiana, respectfully represents:

1.

Jurisdiction is founded herein pursuant to 28 U.S.C. §1331 (federal question) and 28 U.S.C. §1367 affording supplemental jurisdiction over Petitioner's claims arising under State law. Venue is proper within this judicial district as a majority of the acts alleged herein occurred within the Middle District.

2.

Made defendants herein are: 1) The Hospital Service District of West Feliciana Parish, Louisiana d/b/a West Feliciana Parish Hospital (hereinafter "WFPH"), a governmental entity created by the West Feliciana Parish Police Jury domiciled and actually doing business in West Feliciana Parish, Louisiana; and, 2) Board of Commissioners of The Hospital Service District of West Feliciana Parish, Louisiana, a governmental entity domiciled and actually doing business in West Feliciana Parish, Louisiana, which has "absolute control and authority over" the West Feliciana Parish Hospital established pursuant to West Feliciana Parish Policy Jury Ordinance 189

adopted on February 21, 1968, (hereinafter BOC), which are justly and truly indebted unto Petitioner for all sums as are reasonable under the premises, attorney's fees, all costs of these proceedings, legal interest thereon from the date of demand until paid, and all such other relief to which Petitioner is entitled at law or in equity.

3.

On July 17, 2013, Petitioner was hired by defendants to serve as Director of the Intensive Outpatient Program ("IOP") at WFPH. In that position, Petitioner reported directly to WFPH CEO, Lee Chastant, and then to the WFPH BOC, all of whom are appointed by the West Feliciana Parish Police Jury. At all times pertinent hereto, WFPH was a body politic capable of being sued. At all times pertinent hereto, BPC was a body politic capable of being sued and which, by Ordinance 189, had "absolute control and authority over" the West Feliciana Parish Hospital.

4.

Shortly after her hire, defendants advised Petitioner that she was now to report to Life Phases Management Company, a contractor hired by and employed by defendants to manage the IOP at WFPH. In conjunction therewith, defendants directed Petitioner to report to Jill Elias and Sherry Banks with Life Phases.

5.

Thereafter, Petitioner became aware of several instances of misconduct, consisting of Life Phases encouraging IOP staff not to report client/patient abuse to the proper authorities as required by law, billing Medicare/Medicaid through WFPH for services not actually provided, Elias and/or Banks affixing to patient records the signature of a WFPH therapist without said therapist's consent and purportedly attesting to the provision of services to patients which were not actually provided to the patients, and the deliberate failure and/or refusal by Elias and/or Banks to provide

client services to patients of WFPH required by said patients' treating health care providers, but continuing to bill for said services.

6.

Petitioner confronted Elias, Banks, Chastant, and defendants about the unlawful conduct, including providing (HIPPA redacted) copies of the actual records showing where services, which had been actually billed to Medicare/Medicaid, other medical providers, had not been provided by either Elias or the IOP Program at WFPH, HIPPA redacted documents showing where the treating therapist's signature had been forged, and where Elias and/or Banks had executed documents attesting to their rendition of patient services which had never been provided.

7.

Thereafter, and as a result of Petitioner's whistle-blowing activities, defendants began harassing Petitioner, issuing Petitioner baseless write ups, taking away Petitioner's job duties, including removing her from Marketing from her job description and changing department policies and procedures without Petitioner's input as the Program Director.

8.

Following Petitioner's repeated reports of illegal conduct to WFPH CEO, Lee Chastant, regarding consultants Elias and Banks, to no avail, Petitioner proceeded to report the illegal conduct to WFPH Compliance Officer, Janay Perkins, on July 7, 2014.  Perkins then told Elias and Banks, as well as Chastant, that Petitioner had filed her complaints against Elias and Banks of illegal conduct.  Yet, no action was taken by defendants to address, investigate, or remedy the on-going situation in Petitioner's working environment.  Petitioner then contacted Vice Chair of the WFPH BOC, Cheryl Franklin, regarding the illegal activities.  Franklin then directed Petitioner to mail copies of her previous complaints of unlawful conduct to each member of the

WFPH Board of Commissioners on July 11, 2014. This was the identical information previously provided to Perkins on July 7, 2014, and Chastant, throughout her employment with defendants.

9.

After receiving no response to her complaints to the WFPH Board of Commissioners after mailing each member copies of her previous complaints of unlawful conduct on July 11, 2014, and August 21, 2014, Petitioner appeared at the Public Meeting of the WFPH Board of Commissioners to openly present her concerns.

10.

Following the WFPH Board meeting on Thursday, August 21st, 2014, and Petitioner's continued reports, protests, and complaints of unlawful conduct, Petitioner was falsely accused the next day on Friday, August 22, 2014, of a public disturbance and stealing hospital property. As a result, Perkins, as instructed by Chastant, called the police to have Petitioner arrested. After four (4) police officers arrived, the police determined no such crime nor any crime for that matter, had occurred. During this incident, WFPH created a very public scene during which Petitioner was subjected to ridicule, abasement, and was publicly defamed by WFPH, through Perkins, of committing the crimes of theft and public disturbance. As a result, Petitioner suffered such extreme emotional distress, she immediately went to the Emergency Room and continues to need medical care for health related issues pertaining to this incident and the situation in her working environment.

11.

Almost immediately thereafter, on August 29, 2014, Petitioner received a letter from defendants' Attorney, Clay J. Countryman, essentially threatening legal action and/or termination of Petitioner and wrongfully accusing Petitioner of transferring and/or removing HIPPA protected information from WFPH. In that August 29, 2014, correspondence, the defendant's Attorney also

advised defendants were investigating Petitioner for providing HIPPA protected information to members of the WFPH Board of Commissioners. The allegations were false and defamatory.

12.

At the same time, defendants, through Chastant, unilaterally placed Petitioner on Administrative Leave pending the "investigation".

13.

At all times, the "investigation" constituted little more than a witch hunt in an attempt to try and find a reason for terminating Petitioner's employment. Immediately, Petitioner's computer access was blocked and locked for no reason and defendants labeled Petitioner as a criminal among Petitioner's peers and members of the community at large. Notably, defendants had terminated Petitioner's predecessor, Mary Brandon, LCSW, for her whistle-blowing activities regarding Life Phases when Petitioner's predecessor provided the WFPH Board of Commissioner with documentation regarding illegal activities - upon information and belief, substantially similar to the activities which Petitioner had reported. Upon information and belief and therefore Petitioner alleges, defendants have a pattern and practice of retaliation/reprisal against whistle-blowers by threatening and accusing employees of HIPPA violations and unfounded misconduct.

14.

Thereafter, on Thursday, October 23, 2014, defendants terminated Petitioner's employment claiming only that she was an employee "at will". Petitioner contends she was harassed, her job duties removed, she was placed on administrative leave, falsely and publicly accused Petitioner of engaging in unlawful activities, and ultimately terminated because she reported, protested, and opposed the illegal activities set forth above.

15.

Petitioner contends she has been subjected to illegal reprisal in violation of La. R.S. 23:967 for which she specifically sues for herein.

16.

At all times pertinent hereto, defendants were persons acting under color of authority within the meaning and intent of 42 U.S.C. §1983.

17.

At all times pertinent hereto, Petitioner enjoyed a clearly established right to report, protest, and oppose unlawful billing, false signatures on patient records, and false patient service records pursuant to the 1st Amendment to the United States Constitution. Petitioner contends that defendants violated her clearly established rights by subjecting her to harassment, removal of her job duties, unilaterally placing her on administrative leave, falsely accusing Petitioner of engaging in unlawful activities, and ultimately terminating her because she engaged in 1st Amendment protected speech.

18.

Defendants are liable unto Petitioner pursuant to 42 U.S.C. §1983.

19.

As a result of the situation sued upon herein, Petitioner sustained damages which include, but are not limited to, loss of her job, lost pay and benefits, loss of standing in the community, loss of employment opportunities, humiliation and embarrassment, medical bills, health issues and all such other damages as will be more fully shown at trial and all for which Petitioner sues for herein.

20.

Petitioner is entitled to and desires an award of attorney's fees pursuant to La. R.S. 23:967 and 42 U.S.C. §1988.

21.

Petitioner is entitled to and desires an award of all such other relief to which she is entitled at law or in equity.

22.

Petitioner is entitled to and desires trial by jury of this matter.

WHEREFORE, Petitioner, Dr. Maria S. Williams, prays for trial by jury and after due proceedings are had that there be Judgment herein in her favor and against defendants, jointly and in solido as allowed by law, for all sums as are reasonable under the premises, attorney's fees, all costs of these proceedings, legal interest thereon from the date of demand until paid, and all such other relief to which Petitioner is entitled at law or in equity.

Respectfully submitted,

By:___s/Jill L. Craft_____
Jill L. Craft, T.A., #20922
Attorney at Law, LLC
509 Saint Louis Street
Baton Rouge, Louisiana 70802
(225) 663-2612