UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

MARIA S. WILLIAMS                                              CIVIL ACTION

VERSUS

THE HOSPITAL SERVICE DISTRICT
OF WEST FELICIANA PARISH,
LOUISIANA, ET AL.                                              No. 15-00095-BAJ-SCR

RULING AND ORDER

Before the Court is a **Motion to Dismiss for Failure to State a Claim (Doc. 4)** filed by Defendants The Hospital Service District of West Feliciana Parish, Louisiana ("WFPH") and the Board of Commissioners of the Hospital Service District of West Feliciana Parish ("Board of Commissioners" or "Board," collectively "Defendants"). Defendants seek dismissal of Plaintiff Dr. Maria S. Williams' ("Williams" or "Plaintiff") employment retaliation and civil rights claims against it pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) on the ground that Williams did not sufficiently plead her claims. (Doc. 4-1). Plaintiff has opposed Defendants' Motion to Dismiss (Doc. 10). Oral argument is not necessary. Jurisdiction is proper pursuant to 28 U.S.C. § 1331. For the reasons stated below, Defendants' **Motion to Dismiss for Failure to State a Claim (Doc.4)** is **DENIED**.

1

## I. BACKGROUND

### A. Williams' Allegations and Defendants' Response

Williams avers that she was hired by Defendants in July 2013 to serve as Director of the Intensive Outpatient Program ("Program") at WFPH. (Doc. 12 at ¶ 3). Shortly after Plaintiff was hired, Defendants directed that Plaintiff report to Jill Elias ("Elias") and Sherry Banks ("Banks") of Life Phases Management Company ("Life Phases"), a contractor that Defendants hired to manage WFPH's Program.[1] (*Id.* at ¶ 5). At some point thereafter, Williams "became aware of several instances" of alleged "illegal conduct" by Program staff that Plaintiff claims was "actively encouraged" by Banks and Elias. (*Id.* at ¶ 6). Williams asserts that the purported misconduct included failure to report client and/or patient abuse to the proper authorities, irregular billing through the Medicare and Medicaid programs for services not actually provided, and the creation of inaccurate or artificial documentation. (*Id.*).

Plaintiff contends that she "confronted" Elias and Banks about the alleged misconduct in the fall of 2013. (*Id.* at ¶ 7). When Life Phases purportedly did not act to correct the deficiencies, Williams alleges she provided redacted copies of records detailing the deficiencies to WFPH Chief Executive Officer Lee Chastant ("Chastant"), and reported the client abuse to the Louisiana Elderly Protective Service and to a Board Member of the Louisiana State Board of Licensed Professional Counselors and Licensed Marriage and Family Therapists. (*Id.* at ¶¶ 4, 7).

---

[1] Neither Elias, Banks, nor Life Phases is named as a defendant in this action.

2

Williams claims that thereafter, and as a result of her reporting activities, Defendants began "harassing" her by "issuing her baseless write ups, taking away her job duties . . . and changing department policies and procedures without her input as the Program Director." (*Id.* at ¶ 8). Plaintiff also avers that after Chastant, Elias, and Banks failed to act to correct the alleged deficiencies, Plaintiff reported the purported misconduct to the WFPH Compliance Officer, Janay Perkins ("Perkins"). (*Id.* at ¶ 9). Perkins reportedly notified Chastant, Elias, and Banks that Williams had filed a complaint, but did not conduct an investigation into either the alleged violations or the averred "retaliatory acts" against Williams. (*Id.*). Plaintiff attests that she then followed up by reporting the alleged misconduct to the Vice Chair of the Board of Commissioners, Cheryl Franklin ("Franklin"). (*Id.*). Upon Franklin's request, Williams mailed each member of the Board of Commissioners copies of the materials she provided Perkins. (*Id.*). Plaintiff further avers she then reported the alleged misconduct to the Baton Rouge Medicaid Control Unit at the Louisiana Department of Health and Hospitals. (*Id.*).

Plaintiff asserts that after she also failed to receive a response to her mailings from the Board of Commissioners or its members, she testified as to the alleged misconduct at an August 2014 public meeting of the Board of Commissioners, where the Board members "acknowledged receiving [the] documentation and stated that an investigation was near completion." (*Id.* at ¶ 10). Williams then alleges that on the day after the public meeting, Perkins, acting on Chastant's instruction, publicly accused Williams of creating a public disturbance

3

and theft of hospital property, and called the police to have Williams arrested. (*Id.* at ¶ 11). The four police officers responding to the arrest call determined that no crime had occurred, but Plaintiff claims she suffered "such extreme emotional distress" from the events that she immediately sought medical care and continues to do so. (*Id.*).

Williams further alleges that one week after these events, on August 29, 2014, she received a letter from Defendant's attorney "essentially threatening legal action and/or termination of [Williams] and wrongfully accusing [Williams] of transferring and/or removing [Health Insurance Portability and Accountability Act] protected information from WFPH," and that Defendants were investigating her for providing this information to the members of the Board of Commissioners. (*Id.* at ¶ 12). Plaintiff contends that Defendants' allegations were "false and defamatory" because she had redacted the information she provided the Board members. (*Id.*). Notwithstanding, Defendants allegedly then placed Williams on administrative leave pending the investigation. (*Id.* at ¶ 13). Plaintiff contends that the two month investigation was "little more than a witch hunt in an attempt to try to find a reason for terminating [Plaintiff's] employment." (*Id.* at ¶ 14). On October 23, 2014, Williams contends Defendants terminated her employment, citing her "at will" employment status as a basis for the termination, but failing to cite any findings from the investigation. (*Id.* at ¶ 15).

Plaintiff has alleged that Defendants are liable to her for illegal reprisal under the Louisiana Whistleblower Statute[2] and for violating her First Amendment rights under 42 U.S.C. § 1983.[3] (*Id.* at ¶¶ 16–19). Williams seeks damages, any unspecified relief to which she may be entitled at law or in equity, and attorney's fees. (*Id.* at ¶¶ 20–22). Defendants deny Plaintiff's substantive allegations and assert a number of affirmative defenses in their Answer, and have filed the instant motion to dismiss. (Docs. 4, 15).

### B. Procedural History

Plaintiff filed her Complaint in this action on February 20, 2015. (Doc. 1). In response, Defendants filed the instant motion on April 27, 2015. (Doc. 4). On May 20, 2015, Plaintiff was granted leave by the Court to file her Supplemental and Amending Complaint ("Amended Complaint"). (Docs. 11, 12). Defendants filed their Answer on June 3, 2015. (Doc. 15).

## II. LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim

---

[2] La. Rev. Stat. § 23:967.
[3] Plaintiff has properly alleged that "[D]efendants were persons acting under color of authority within the meaning and intent of 42 U.S.C. § 1983." (Doc. 12 at ¶ 17).

for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

Hence, the complaint need not set out "detailed factual allegations," but something "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" is required. *Twombly*, 550 U.S. at 555. However, the complaint must inform the defendant of the factual basis for the action to avoid dismissal. *Johnson v. City of Shelby, Miss.*, ___ U.S. ___, ___, 135 S. Ct. 346, 347 (2014) ("Petitioners stated simply, concisely, and directly events that, they alleged, entitled them to damages from the city. Having informed the city of the factual basis for their complaint, they were required to do no more to stave off threshold dismissal for want of an adequate statement of their claim."). When a complaint fails to satisfy these principles, "this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 558).

## III. ANALYSIS

### A. Whether Williams Properly Alleged a Violation of the Louisiana Whistleblower Statute

The Court must first determine whether Plaintiff properly alleged a violation of the Louisiana Whistleblower Statute. Defendants make two arguments to

6

support their position that Williams does not properly allege a violation of the statute in her Complaint. First, Defendants contend that Plaintiff did not allege a violation of *state* law in her Complaint. (Doc. 4-1 at p. 5–7). Second, Defendants assert that Williams does not allege that she engaged in any activity that would be protected by the statute. (Doc. 4-1 at p. 7–8).

A plaintiff properly pleads a claim under the Louisiana Whistleblower Statute if she alleges (1) that the employer "violated the law through a prohibited workplace act or practice"; (2) the plaintiff advised the employer of the violation; (3) the plaintiff then "refused to participate in the prohibited practice or threatened to disclose the practice"; and (4) the plaintiff "was fired as a result of [her] refusal to participate in the unlawful practice or threat to disclose the practice." *Richardson v. Axion Logistics, L.L.C.*, 780 F.3d 304, 306 (5th Cir. 2015) (describing the elements of the statute in evaluating a dismissal under Rule 12(b)(6)). To properly state a claim under the statute, "'a plaintiff must allege the violation of state law'" and must indicate in the complaint which state law, if any, the defendant violated. *Genella v. Renaissance Media*, 115 F. App'x 650, 652 (5th Cir. 2004) (citing *Ware v. CLECO Power LLC*, 90 F. App'x 705, 709 (5th Cir. 2004) (unpublished, but persuasive). Allegations that the employer violated federal law are insufficient; the statute "is only triggered by violations of Louisiana law . . . ." *Wilson v. Tregre*, 787 F.3d 322, 327 (5th Cir. 2015). The statute itself lists three protected disclosure activities for which the employee is protected: (1) providing information to any public body conducting an investigation, hearing, or inquiry into any violation of

law; (2) testifying before any public body conducting an investigation, hearing, or inquiry into any violation of law; and (3) objecting or refusing to participate in an employment act or practice that violates the law. La. Rev. Stat. § 23:967(A)(2)-(A)(3); *cf. Accardo v. La. Health Servs. & Indem. Co.*, 2005-2377, p. 7 (La. App. 1 Cir. 6/21/06), 943 So.2d 381, 385 (interpreting the language of the statute to conclude that the plaintiff's "good faith" in reporting an employer violation of the law and advising the employer of the actual violation of the law are required "before the employee undertakes one of the three protected disclosure activities.").

Here, Plaintiff's Amended Complaint addresses both of Defendants' arguments. Williams expressly alleges Defendants violated several statutes, including Louisiana laws against failing to report the abuse or neglect of an adult,[4] committing Medicaid fraud,[5] filing false public records with a public office or official,[6] presenting a false or fraudulent claim,[7] and forgery.[8] (Doc. 12 at ¶ 6). In addition, Plaintiff asserts that she engaged in a protected disclosure activity by providing information regarding the Defendants' alleged violations of state law to several public bodies, including the Louisiana Elderly Protective Services, a member of the Board of the Louisiana State Board of Licensed Professional Counselors and Licensed Marriage and Family Therapists, and the Louisiana Department of Health and Hospitals. (Doc. 12 at ¶¶ 7, 9). In addition, Plaintiff's

---

[4] *See* La. Rev. Stat. § 14:403.2. Plaintiff also alleges that failing to report client/patient abuse to the proper authorities is required by Louisiana Revised Statute 15:504, which the Court has been unable to confirm. (Doc. 12 at ¶ 6).
[5] *See* La. Rev. Stat. § 14:70.1. This provision was amended by the Louisiana State Legislature on June 19, 2015.
[6] *See* La. Rev. Stat. § 14:133.
[7] *See* La. Rev. Stat. § 46:438.3.
[8] *See* La. Rev. Stat. § 14:72.

8

Amended Complaint also alleges that she notified Elias, Banks, and Chastant of the purportedly illegal activity before reporting it to any outside agency, and then notified Perkins and each member of the WFPH Board of Commissioners before reporting the alleged activity to a second group of public officials. (Doc. 12 at ¶¶ 7, 9). Lastly, Williams alleges that shortly after these activities, Defendants threatened her with legal action regarding her alleged misconduct, placed her on administrative leave pending an investigation, and eventually terminated her employment. (Doc. 12 at ¶¶ 12–15). As such, Plaintiff has sufficiently alleged all of the required elements of a claim under the Louisiana Whistleblower Statute in her Amended Complaint.

### B. Whether Defendants are "Persons" Under the 42 U.S.C. § 1983

Second, the Court will consider Defendants' argument that "Defendants in their official capacities under § 1983 should be dismissed because they do not qualify as 'persons' under the statute." (Doc. 4-1 at p. 9). Defendants also contend that Williams' Complaint does not set forth any factual allegations of improper conduct by the Board. (Doc. 4-1 at p. 11–12).

Title 42 U.S.C. § 1983 provides citizens of and persons under the jurisdiction of the United States a cause of action against '[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws. . . ." 42 U.S.C. § 1983. "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally

guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992). "Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989). While states and state officials in their official capacities cannot be sued under § 1983, municipalities and state officials in their individual capacities can be held liable under the statute. *See Hafer v. Melo*, 502 U.S. 21, 27 (1991) ("State officers sued for damages in their official capacity are not "persons" for purposes of the suit because they assume the identity of the government that employs them. By contrast . . . [a] government official in the role of personal-capacity defendant thus fits comfortably within the statutory term "person.'"); *Will*, 491 U.S. at 71 ("We hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983."); *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690, 694 (1978) (holding that the Eleventh Amendment does not prevent a local government entity from being held liable under § 1983 when the allegedly unconstitutional action implements or executes a government policy or custom and inflicts the injury).

In her Amended Complaint, Williams alleges that WFPH is a governmental entity "created" by the West Feliciana Parish Police Jury, and that the Board of Commissioners is a governmental entity that operates as WFPH's governing body and whose "powers [were] established pursuant to West Feliciana Parish Policy Jury Ordinance 189 . . . ." (Doc. 12 at ¶ 2). Defendants cite this Court's opinion in

*Minnis v. Board of Supervisors of LSU*, 972 F. Supp. 2d 878 (M.D. La. 2013), as support for its argument that neither Defendant can be considered a "person" under § 1983. (Doc. 4-1 at p. 9–10). However the *Minnis* defendants were the Board of Supervisors of a state university and three of its administrators in their official and individual capacities. *See Minnis*, 972 F.Supp. 2d at 887–88. This Court dismissed the § 1983 claims against the *Minnis* Board of Supervisors and administrators in their official capacities because "[a]lthough state officials 'literally are persons, . . . a suit against a state official in his or her official capacity is not a suit against the official, but rather is a suit against the official's office. As such it is no different from a suit against the state itself." *Minnis*, 972 F. Supp. 2d at 887 (citing *Will*, 491 U.S. at 71).

In contrast, Louisiana law characterizes a police jury as a type of parish governing authority. La. Rev. Stat. § 33:1236 ("The police juries and other parish governing authorities shall have the following powers . . . ."). As such, and as Williams argues in her Opposition to the Motion here, both WFPH and the Board of Commissioners "are not the State of Louisiana or an arm thereof," (Doc. 10 at p. 16), but arms of the parish. "Since it is settled law that the parishes are not protected from suit by the [E]leventh [A]mendment," *United States v. St. Bernard Parish*, 756 F.2d 1116, 1126 (5th Cir. 1985), Defendants are considered "persons" under § 1983.

Additionally, Plaintiff states in her Amended Complaint that the Board of Commissioners has "'absolute control and authority over'" WFPH staffing decisions. (Doc. 12 at ¶ 4). Accepting all matter in the Amended Complaint as true, it follows

11

by implication that Williams' allegations against WFPH regarding her investigation and termination can also be construed as allegations against the Board of Commissioners.

C. Whether Williams Actions Were Protected Speech Under the First Amendment

Lastly, the Court must decide whether Williams' activities qualify as protected speech under the First Amendment. Defendants argue that Plaintiff's speech was "only a matter of internal concern within her obligations as director . . . not a matter of public concern" and is, therefore, not protected. (Doc. 4-1 at p. 10–11).[9]

The United States Court of Appeals for the Fifth Circuit has articulated a two-step inquiry that courts are to use to determine whether a public employee's speech is protected by the First Amendment. *Gibson v. Kilpatrick*, 773 F.3d 661, 666–67 (5th Cir. 2014) (citing *Lane v. Franks*, ___ U.S. ___, ___, 134 S. Ct. 2369, 2378 (2014)). First, the court must determine "whether the employee spoke as a citizen on a matter of public concern." *Id.* at 666. The Supreme Court has clarified that a public employee does not speak "as a citizen" when she speaks "pursuant to

---

[9] Defendants also allude to a qualified immunity defense by arguing that Williams did not have a "clearly established" right to her speech. (Doc. 4-1 at p. 10). "Qualified immunity questions should be resolved 'at the earliest possible stage in litigation.'" *Porter v. Epps*, 659 F.3d 440, 445. Once a public official asserts qualified immunity, the plaintiff must establish that the official's allegedly wrongful conduct violated clearly established law to rebut the defense; the courts do not place this burden on the official. *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 380. However, qualified immunity is unavailable to defendants sued only in their official capacities and not in their individual capacities. *Kentucky v. Graham*, 473 U.S. 159, 166–67 (1985) ("When it comes to defenses to liability, an official in a personal-capacity action may, depending on his position, be able to assert personal immunity defenses, such as objectively reasonable reliance on existing law. In an official-capacity action, these defenses are unavailable.") (citations omitted). Here, Williams' action does not name any defendants in their individual capacities and, as such, qualified immunity is unavailable as a defense.

[her] official duties." *Id.* at 667 (quoting *Garcetti v. Ceballos*, 547 U.S. 410 (2006)). The Supreme Court has also observed that "public employees 'are uniquely qualified to comment' on 'matters concerning government policies that are of interest to the public at large,'" and has noted that "corruption in a public program . . . obviously involves a matter of significant public concern." *Lane*, ___ U.S. at ___, 134 S. Ct at 2380. Second, the court must determine "whether the government employer had a constitutionally sufficient justification for punishing the employee for his speech by balancing the interest in allowing the speech against the interest in penalizing it. *Gibson*, 773 F.3d at 666–67. This approach is also known as the *Pickering* balancing test. *See id.* The Fifth Circuit has held that there is a rebuttable presumption that no balancing is required to state a prima facie case at the motion to dismiss stage. *Burnside v. Kaelin*, 773 F.3d 628 (5th Cir. 2014).

A public employee may establish a First Amendment, free speech retaliation claim under § 1983 if she shows that "(1) she suffered an adverse employment action; (2) her speech involved a matter of public concern; (3) her interest in commenting on matters of public concerns outweighed the defendant's interest in promoting workplace efficiency; and (4) her speech was a substantial motivating factor in the defendant's adverse employment action."[10] *Burnside*, 773 F.3d at 624;

---

[10] Defendants cite a slightly different Fifth Circuit standard for First Amendment, free speech retaliation claims that would require that a plaintiff allege "(1) she was engaged in constitutionally protected activity, (2) the defendants" actions caused her to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against the plaintiff['s] exercise of constitutionally protected conduct." *Keenan v. Tejada*, 290 F.3d 252, 258 (5th Cir. 2002) (citations omitted). However, the *Keenan* Court expressly noted that "this case does not involve an employment or other contractual relationship between the plaintiffs and the government officials." *Id.* Therefore, the Court finds this standard to be inapposite.

*see also West v. Atkins*, 487 U.S. 42, 48 (1988) (stating that a plaintiff must also show that the alleged constitutional deprivation was committed by a person acting under color of law).

Here, Williams has alleged in her Amended Complaint that her "primary job duties included directing and supervising program staff, providing patient assessment and treatment, serving as a member of a multi-disciplinary team in order to provide input in treatment planning, and coordinating the patient admission process." (Doc. 12 at ¶ 3). Plaintiff does not allege, nor do Defendants assert, that the speech in question was "pursuant to [her] official duties." (*See* Docs. 4-1, 12). Further, in keeping with the Supreme Court's observations, alleged fraud, waste, and abuse in a public program are topics of "significant public concern." As such, the Court finds that Plaintiff has sufficiently alleged that she spoke as a citizen on a matter of public concern, satisfying the first prong of the Fifth Circuit's *Gibson* test. As previously noted, Williams is not required to satisfy the *Pickering* balancing test at the motion to dismiss stage; however, Defendants may renew this argument at a later stage in the litigation.

The Court also finds that, for the purpose of surviving a motion to dismiss, Plaintiff has sufficiently alleged a First Amendment, free speech retaliation claim in her Amended Complaint. Williams alleges she was progressively targeted and ultimately terminated from her public employment for speaking publically about a matter of public concern "because she reported, protested, and opposed the [Defendants' alleged] illegal activities." (Doc. 12 at ¶ 15). This allegation describes

an adverse employment action substantially motivated by Plaintiff's speech on a matter of public concern, and therefore avers the elements of a First Amendment, free speech retaliation claim necessary to survive a motion to dismiss.

Accordingly,

**IT IS ORDERED** that Defendants' **Motion to Dismiss for Failure to State a Claim (Doc. 4)** is **DENIED**.

Baton Rouge, Louisiana, this 5th day of August, 2015.

_____
**BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**