## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

DR. MARIA S. WILLIAMS                                              CIVIL ACTION

VERSUS

THE HOSPITAL SERVICE                         NO.: 15-00095-BAJ-RLB
DISTRICT OF WEST FELICIANA
PARISH, LOUISIANA

### RULING AND ORDER

Before the Court is **Defendants' Motion for Summary Judgment (Doc. 25)**, filed by Defendants Hospital Service District of West Feliciana Parish, Louisiana, and Board of Commissioners of the Hospital Service District of West Feliciana Parish.  Defendants seek summary judgment on the claims asserted by Plaintiff Maria S. Williams, which relate to the termination of her employment.  Plaintiff filed a memorandum in opposition to the Motion, (*see* Doc. 29); Defendants filed a reply memorandum in support of the Motion, (*see* Doc. 37); and Plaintiff filed a sur-reply in opposition to the Motion, (*see* Doc. 39).  On February 21, 2017, the Court held a hearing on the Motion.  For the reasons explained herein, **Defendants' Motion for Summary Judgment (Doc. 25)** is **GRANTED IN PART and DENIED IN PART**.

1

I.      BACKGROUND[1]

West Feliciana Parish Hospital ("Hospital") provides certain medical services to the public through its Intensive Outpatient Care Program ("IOP").[2]  At the time of the events giving rise to this lawsuit, Life Phases Consulting, LLC – a private company that was owned by Sherry Banks ("Banks") and Jill Elias ("Elias") – oversaw the operations of the IOP.  On July 16, 2013, Plaintiff was hired as the IOP's Program Director.

Throughout the course of her employment as the IOP's Program Director, Plaintiff allegedly became aware of various workplace practices that violated state law.  First, Plaintiff alleges that she observed Elias affix the name of Lynn Goudeaux ("Goudeaux"), a therapist, to a patient's progress report; Plaintiff asserts that Elias *forged* Goudeaux's signature so that the document appeared to have been signed by Goudeaux.  Plaintiff subsequently reported the alleged forgery to the Louisiana State Board of Social Work Examiners.  Second, Plaintiff alleges that Defendants engaged in a practice of entering initial billing codes that misrepresented the length of therapy sessions, thereby charging Medicaid and other medical assistance programs for therapy services that were not actually rendered to patients, which Plaintiff reported to the Federal Bureau of Investigation.  (*See* Doc. 29-2 at pp. 26-34; *id.* at p. 61, ll. 3-8).  As a result of Plaintiff's complaints to Banks, Elias, and the CEO of the Hospital

---

[1] The parties agreed on certain undisputed facts contained herein. *Compare* Doc. 25-1 (outlining facts that Defendants assert as undisputed), *with* Doc. 29-1 (outlining facts that Plaintiff asserts as undisputed).  All other facts recounted in this section are derived from the exhibits submitted by the parties and are accompanied by corresponding record citations.

[2] The Hospital falls within the authority of the Hospital Service District of West Feliciana Parish, Louisiana.  *See* W. Feliciana Par. Code § 16-41.

– Lee Chastant ("Chastant") – regarding the billing practices, an audit was conducted of the IOP's billing records.  (Doc. 29-3 at p. 87, ll. 2-6).  Third, when Plaintiff confronted Elias regarding the possible abuse of an adult at a care facility and sought guidance from Elias regarding Plaintiff's mandatory duty to report such abuse under state law, Elias allegedly said that "she didn't think that it was a good idea for [Plaintiff] to report" the abuse because the Hospital had "just repaired [its] relationship[]" with the management of the facility at which the alleged abuse occurred.  (Doc. 29-2 at p. 41, ll. 12-15).   Plaintiff informed Banks, Elias, and Chastant on multiple occasions that she opposed these practices and alleged violations of state law.  (*Id.* at p. 31, ll. 8-12).  On July 3, 2014, Plaintiff informed the Hospital's Compliance Committee in writing of the workplace practices that she alleged violated state law.  (*See* Doc. 29-3 at p. 21).

On August 22, 2014, the Hospital's Compliance Officer – Janay Perkins ("Perkins") – observed a man whom she did not recognize in Plaintiff's office.[3]  Perkins also observed Plaintiff utilize her office printer to print paperwork and later observed the man holding papers in his hand.  (*See* Doc. 25-4 at p. 10, ll. 10-11).  Perkins demanded that Plaintiff inform her of the identity of the man and the contents of the papers, but Plaintiff declined to provide Perkins with such information.  After this incident, Plaintiff was placed on administrative leave, pending an investigation into whether Plaintiff had committed a violation of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") by conveying the paperwork to the unidentified

---

[3] Melvin Young, then a member of the West Feliciana Parish Council, was having a conversation with Plaintiff in her office.  (Doc. 29-2 at p. 50, ll. 6-7).

man.  Plaintiff then was terminated on October 23, 2014, after receiving a Separation

Notice from Chastant.  Plaintiff asserts that she was terminated because she opposed

and reported the workplace practices that she alleges amounted to violations of state

law.

## II.    LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(a).  "A party asserting that a fact cannot be or is

genuinely disputed must support the assertion by . . . citing to particular parts of

materials in the record [–] including depositions, documents, electronically stored

information, affidavits or declarations, stipulations (including those made for

purposes of the motion only), admissions, [and] interrogatory answers" – or by

averring that an adverse party cannot produce admissible evidence to support the

presence of a genuine dispute.  Fed. R. Civ. P. 56(c)(1).

"[W]hen a properly supported motion for summary judgment is made, the

adverse party must set forth specific facts showing that there is a genuine issue for

trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation marks

and footnote omitted).  "This burden is not satisfied with some metaphysical doubt as

to the material facts, by conclusory allegations, by unsubstantiated assertions, or by

only a scintilla of evidence."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.

1994) (quotation marks and citations omitted).  In determining whether the movant

is entitled to summary judgment, the Court "view[s] facts in the light most favorable to the non-movant and draw[s] all reasonable inferences in her favor." *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

In sum, summary judgment is appropriate if, "after adequate time for discovery and upon motion, [the non-movant] fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III.   DISCUSSION

Defendants assert that they are entitled to summary judgment (1) on Plaintiff's claim under Louisiana Revised Statutes section 23:967 ("Louisiana Whistleblower Statute") because Plaintiff cannot establish that she reported an actual violation of state law, as required by the statute; (2) on Plaintiff's state-law whistleblower claim because Plaintiff cannot rebut Defendants' proffered legitimate, nondiscriminatory reason for her termination; and (3) on Plaintiff's First Amendment retaliation claim under 42 U.S.C. § 1983 because Plaintiff's speech did not involve a matter of public concern.  For the reasons discussed herein, the Court finds that summary judgment is not appropriate on Plaintiff's claim under the Louisiana Whistleblower Statute insofar as she premises that claim on a violation of Louisiana Revised Statutes section 14:403.2, nor is summary judgment appropriate on Plaintiff's First Amendment retaliation claim.

### A.    State-Law Whistleblower Claim

The Louisiana Whistleblower Statute provides that:

> An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of the law:  (1) [d]iscloses or threatens to disclose a workplace act or practice that is in violation of state law[;] (2) [p]rovides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of the law[; or] (3) [o]bjects to or refuses to participate in an employment act or practice that is in violation of law.  La. Rev. Stat. § 23:967(A).

In order to state a claim under the Louisiana Whistleblower Statute, the Louisiana Supreme Court has held that a plaintiff "must establish that the employer engaged in workplace conduct constituting an *actual* violation of state law." *Encalarde v. New Orleans Ctr. for Creative Arts/Riverfront*, 2014-2430 (La. 2/13/15); 158 So. 3d 826 (mem.) (emphasis added) (citing *Accardo v. La. Health Servs. & Indem. Co.*, 2005-2377 (La. App. 1 Cir. 6/21/06);  943 So. 2d 381; *Hale v. Touro Infirmary*, 2004-0003 (La. App. 4 Cir. 11/3/04); 886 So. 2d 1210).

Plaintiff alleges that Defendants "engaged in forgery, improper billing/misappropriation, and patient abuse in . . . violation of [s]tate law." (Doc. 29 at p. 3).  Defendants assert that they are entitled to summary judgment on Plaintiff's state-law whistleblower claim because Plaintiff cannot demonstrate that Defendants engaged in conduct that *actually* violated Louisiana state law.  As more fully described below, Defendants are not entitled to summary judgment on Plaintiff's claim under the Louisiana Whistleblower Statute insofar as she premises that claim on a violation of the state law prohibiting the abuse of adults under Louisiana Revised Statutes section 14:403.2.  Plaintiff, however, "fails to make a showing sufficient to

establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial," regarding the claims in which she asserts that Defendants violated the state laws prohibiting forgery, the filing of false records, the presentation fraudulent claims to Medicaid or a medical assistance program, and the shirking of one's mandatory duty to report the abuse of an adult pursuant to Louisiana Revised Statutes sections 14:72, 14:133, 14:70.1, 46:438.3, and 15:1504, respectively, and Defendants thus are entitled to summary judgment on those claims. *Celotex*, 477 U.S. at 322.

### 1.   *Abuse and Neglect of Adults Under Louisiana Revised Statutes Section 14:403.2*

Pursuant to Louisiana Revised Statutes section 14:403.2, it is a crime for "[a]ny person [to] knowingly or willfully obstruct[] the procedures for receiving and investigating reports of adult abuse or neglect."   La. Rev. Stat. § 14:403.2(B). Defendants, in their memorandum in support of the Motion, assert that Plaintiff has alleged a violation of Louisiana Revised Statutes section 14:403, arguing that summary judgment is appropriate because that particular statute – which specifically concerns the abuse of children – is inapplicable to the facts of this case. Contrary to Defendants' assertion, however, Plaintiff has alleged that Defendants violated Louisiana Revised Statutes section 14:403.*2*, (Doc. 12 at ¶ 6), which specifically concerns the abuse and neglect of adults, *see* La Rev. Stat. § 14:403.2. Defendants therefore have not satisfied their burden under Rule 56.  *See* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant *shows* that there is no genuine dispute as to any material fact . . . ." (emphasis added)).

### 2.    *Forgery Under Louisiana Revised Statutes Section 14:72*

Louisiana Revised Statutes section 14:72 makes it "unlawful to forge, with intent to defraud, any signature to, or any part of, any writing purporting to have legal efficacy." La. Rev. Stat. § 14:72(A).  For the purposes of the statute, the term "forge" is defined, in relevant part, as the act of "alter[ing], mak[ing], execut[ing] or authenticat[ing] any writing so that it purports . . . to be the act of another who did not authorize that act [or] [t]o have been executed at a time or place or in a numbered sequence other than was in fact the case."  *Id.*  Regarding the requisite "intent to defraud" under the statute, intent "need not be prove[n] as a fact but may be inferred from the circumstances and transactions of the case," and "it suffices if the forged instrument has prejudiced or might prejudice the rights of another."  *State v. Satchfield*, 35,631, 35,632, p. 4 (La. App. 2 Cir. 8/14/02); 824 So. 2d 537, 541 (quoting *State v. Fraley*, 499 So. 2d 1304 (La. App. 4 Cir. 1986), *writ granted on other grounds*, 512 So. 2d 856 (La. 1987) (mem.)).  The writing in question also must "purport[] to have legal efficacy," which is a phrase that "should be broadly construed."  La. Rev. Stat. § 14:72 reporter's cmt.

Viewing the facts in the light most favorable to Plaintiff, the Court finds that Plaintiff cannot demonstrate that Elias possessed the requisite intent to defraud when she affixed Goudeaux's name to the patient progress report.  The patient progress report in question was not a "billable" document, and therefore it was not used to obtain funds from a third party.  (Doc. 29-3 at p. 106, l. 12).  Plaintiff has produced no facts that indicate that the relevant patient was prejudiced by the

addition of Goudeaux's name to the progress report, nor can such prejudice be

"inferred from the circumstances and transactions of the case" because the addition

of Goudeaux's name did not alter the *substance* of the report.  *Satchfield*, 35,631,

35,632 at p. 4; 824 So. 2d at 541.  (*See id.* at p. 106, l. 11 (indicating that Elias merely

affixed Goudeaux's name on the "first page" of the progress report)).  Plaintiff thus

has "failed to make a showing sufficient to establish the existence of an element

essential to [her] case, and on which [she] will bear the burden of proof at trial,"

because she cannot demonstrate that Elias acted with the requisite intent to defraud,

and Defendants therefore are entitled to summary judgment insofar as Plaintiff's

claim under the Louisiana Whistleblower Statute is premised on a violation of

Louisiana Revised Statutes section 14:72.  *Celotex*, 477 U.S. at 322.

### 3. *Medicaid Fraud Under Louisiana Revised Statutes Section 14:70.1 and Presentation of False or Fraudulent Claims Under Louisiana Revised Statutes Section 46:438.3*

A person commits "Medicaid fraud" pursuant to Louisiana Revised Statutes

section 14:70.1 when he, "with intent to defraud the state or any person or entity

through any medical assistance program[,] [p]resents for allowance or payment any

false or fraudulent claim for furnishing services or merchandise [or] [k]nowingly

submits false information for the purpose of obtaining greater compensation than

that to which he is legally entitled for furnishing services or merchandise."  La. Rev.

Stat. § 14:70.1(A)(1)-(2).  Similarly, Louisiana Revised Statutes section 46:438.3

makes it unlawful to "knowingly present or cause to be presented a false or fraudulent

claim" or to "conspire to defraud, or attempt to defraud, the medical assistance

9

programs through misrepresentation or by obtaining, or attempting to obtain, payment for a false or fraudulent claim." La. Rev. Stat. § 46:438.3(A), (D).  In order to establish an actual violation of either section, Plaintiff must demonstrate that Defendants *actually* submitted or caused to be submitted a fraudulent claim to Medicaid or a medical assistance program.  *See Caldwell v. Jansen Pharm., Inc.*, 2012-2447, p. 14 (La. 1/28/14); 144 So. 3d 898, 909; *State v. Griffon*, 448 So. 2d 1287, 1290 (La. 1984).

Plaintiff cannot establish that Defendants *actually* submitted or caused to be submitted fraudulent claims to Medicaid or a medical assistance program.  Plaintiff's sole evidence that allegedly fraudulent claims were submitted to Medicaid or a medical assistance program is documentation she obtained of initial billing entries that charged for longer therapy sessions than Plaintiff actually rendered to patients. (*See id.* at pp. 26-34).  Plaintiff has admitted that she "ha[s] no idea" how claims are processed after billing codes are initially entered; therefore, Plaintiff has no personal basis on which to testify that the allegedly fraudulent initial billing entries were *actually* submitted to Medicaid or a medical assistance program.  (Doc. 25-3 at p. 59, l. 13).  Plaintiff has put forth no further documentation to support that assertion – which is an element of her claim – and thus if this claim were to proceed to trial, the jury would be required to engage in improper conjecture and speculation to find that Defendants had violated the state laws prohibiting Medicaid fraud and the presentation of false or fraudulent claims.  Plaintiff's assertion that the initial billing entries were actually submitted to Medicaid or a medical assistance program is thus

"unsubstantiated" and only supported by "a scintilla of evidence," and Defendants therefore are entitled to summary judgment insofar as Plaintiff's claim under the Louisiana Whistleblower Statute is premised on violations of Louisiana Revised Statutes sections 14:70.1 and 46:438.3. *Little*, 37 F.3d at 1075.

### 4.    *Filing False Public Records Under Louisiana Revised Statutes Section 14:133 and Failure to Report Abuse Under Louisiana Revised Statutes section 15:1504*

"[T]he [Louisiana] Whistleblower Statute only offers protection to a specific class of employees:  those employees who face 'reprisals' from their employers based solely upon an employee's *knowledge* of an illegal workplace practice and his refusal to participate in the practice or intention to report it." *Hale*, 2004-0003 at p. 9; 886 So. 2d at 1215.   In order to establish a prima facie case under the Louisiana Whistleblower Statute, Plaintiff therefore must establish that she possessed the *knowledge* that a certain workplace practice amounted to a violation of state law *at the time* she refused to participate in the practice or informed the employer of her intention to report the practice to the authorities. *See id.*

Plaintiff cannot establish that she had the requisite knowledge of the alleged filing of false public records under Louisiana Revised Statutes section 14:133 and the alleged failure of Defendants to report abuse under Louisiana Revised Statutes section 15:1504.   Plaintiff's letter to the Hospital's Compliance Committee demonstrates that, at the time that Plaintiff informed her employer that she intended to report violations of state law, she had knowledge of three suspected violations: "Medicare/Medicaid [b]illing" fraud, "[f]orgery of a therapist['s] signature," and

11

"[i]ntimidation [regairding Plaintiff's] [r]eporting [p]otential [c]lient abuse." (Doc. 29-3 at p. 21). This letter indicates that at the time she informed her employer of her intention to report illegal workplace practices, Plaintiff did *not* have knowledge that those allegedly illegal workplace practices included the filing of false public records – either in relation to the alleged forgery or the alleged fraudulent billing – or the failure of Defendants to report the abuse of an adult. Viewing the letter in the light most favorable to Plaintiff, she had knowledge of alleged violations of Louisiana Revised Statutes sections 14:70.1, 46:438.3, 14:72, and 14:403.2 regarding fraudulent Medicaid billing, the forgery of a signature, and obstruction of her reporting the abuse of an adult. Plaintiff did *not* have knowledge that Defendants were allegedly filing false public records or shirking their mandatory duty to report abuse of an adult under Louisiana Revised Statutes sections 14:133 and 15:1504, respectively. Therefore, because Plaintiff has "failed to make a showing sufficient to establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial," Defendants are entitled to summary judgment insofar as Plaintiff's claim under the Louisiana Whistleblower Statute is premised on violations of Louisiana Revised Statutes sections 14:133 and 15:1504. *Celotex*, 477 U.S. at 322.

### 5. Defendants' Proffered Legitimate, Non-Retaliatory Reasons for Plaintiff's Termination

"Louisiana courts have looked to federal jurisprudence to interpret Louisiana discrimination laws," *King v. Phelps Dunbar, L.L.P.*, 98-1805, p. 7 (La. 6/4/99); 743 So. 2d 181, 187, and thus claims under the Louisiana Whistleblower Statute are analyzed under the framework espoused in *McDonnell Douglas Corp. v. Green*, 411

U.S. 792 (1973), *Kirmer v. Goodyear Tire & Rubber Co.*, 538 F. App'x 520, 527 (5th Cir. 2013); *see also Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 805 n.1 (5th Cir. 2007) ("[T]he standards governing both [Title VII and Louisiana Whistleblower Statute] claims are materially indistinguishable."). Under the *McDonnell Douglas* framework, once a plaintiff makes a prima facie showing that her termination was retaliatory, the burden shifts to the defendant "to state a legitimate, non-discriminatory reason" for firing the plaintiff. *Strong*, 482 F.3d at 805. After the defendant states a legitimate, non-discriminatory reason for the termination, the burden "shifts back" to the plaintiff "to show pretext; that is, to prove by a preponderance that [the defendant] fired her not for its stated reasons, but in retaliation for her" stated intention to report illegal workplace practices. *Id.* at 806.

Defendants assert that Plaintiff was terminated due to her failure to comply with the requests of its Compliance Officer in relation to the incident that occurred in Plaintiff's office on August 22, 2014; Plaintiff refused to identify the content of the papers that she conveyed to the man in her office and to disclose the identity of the man himself. Plaintiff's Separation Notice, however, does not state any reasons for Plaintiff's termination, (*see* Doc. 29-3 at p. 13), and Plaintiff claims that Chastant told her in a subsequent conversation that her termination was "best for the organization" and was based on her inability to administer the IOP program effectively, (Doc. 29-1 at ¶ 37). This inconsistency – between the reasons given for Plaintiff's termination at the time of her termination and the reasons proffered by Defendants in this litigation –  calls into question the legitimacy of those proffered reasons, thereby

presenting a "genuine issue for trial." *Anderson*, 477 U.S. at 250. Therefore, summary judgment is not appropriate on this issue.

### B. First Amendment Retaliation Claim

"A First Amendment retaliation claim must include facts showing (1) that the employee's speech involved a matter of public concern, (2) that the employee suffered an adverse employment action for exercising her First Amendment rights, and (3) that the employee's exercise of free speech was a substantial or motivating factor in the adverse employment action." *Benningfield v. City of Hous.*, 157 F.3d 369, 375 (5th Cir. 1998). In their motion, Defendants state that they are entitled to summary judgment on Plaintiff's First Amendment retaliation claim because "Plaintiff's speech did not involve a matter of public concern." (Doc. 25 at ¶ 3). In their memorandum in support of the Motion, however, Defendants make no mention of or attempt to support this argument, merely asserting – unrelatedly – that "no reasonable juror could find that *race* was a motivating factor in Plaintiff's termination." (Doc. 25-2 at p. 13 (emphasis added)). Because Defendants have not supported their assertion that Plaintiff's speech did not involve a matter of public concern with any relevant argument, Defendants have not satisfied their burden under Rule 56 and thus are not entitled to summary judgment on Plaintiff's First Amendment retaliation claim. *See* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant *shows* that there is no genuine dispute as to any material fact . . . ." (emphasis added)).

14

## IV.    CONCLUSION

Accordingly,

**IT IS ORDERED** that **Defendants' Motion for Summary Judgment (Doc. 25)** is **GRANTED IN PART and DENIED IN PART**.  Summary judgment is **granted** on Plaintiff's claim under Louisiana Revised Statutes section 23:967, insofar as that claim is premised on violations of Louisiana Revised Statutes sections 14:70.1, 14:72, 14:133, 15:1504, and 46:438.3.  Summary judgment is **denied** on Plaintiff's claim under Louisiana Revised Statutes section 23:967, insofar as that claim is premised on a violation of Louisiana Revised Statutes section 14:403.2, and on Plaintiff's First Amendment retaliation claim under 42 U.S.C. § 1983.

**IT IS FURTHER ORDERED** that Plaintiff's claim under Louisiana Revised Statutes section 23:967, insofar as that claim is premised on violations of Louisiana Revised Statutes sections 14:70.1, 14:72, 14:133, 15:1504, and 46:438.3, is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the parties shall have **twenty-one days**, from the date of this Ruling and Order, to file any **additional dispositive motions**.

Baton Rouge, Louisiana, this 31st day of March, 2017.

**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**