# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

DR. MARIA S. WILLIAMS                                   CIVIL ACTION

VERSUS

THE HOSPITAL SERVICE                        NO.: 15-00095-BAJ-RLB
DISTRICT OF WEST FELICIANA
PARISH, LOUISIANA, ET AL.

## RULING AND ORDER

Before the Court is **Defendants' Supplemental Motion for Summary Judgment (Doc. 69)**, filed by Defendants Hospital Service District of West Feliciana Parish, Louisiana, and Board of Commissioners of the Hospital Service District of West Feliciana Parish. In its previous Ruling and Order (Doc. 68), which granted summary judgment in favor of Defendants on all but two of Plaintiff's claims, the Court granted Defendants leave to file a supplemental motion for summary judgment. Defendants seek summary judgment on the remaining claims asserted by Plaintiff Maria S. Williams, which relate to the termination of her employment. Plaintiff filed a memorandum in opposition to the Motion, (*see* Doc. 73); Defendants filed a reply memorandum in support of the Motion, (*see* Doc. 76); and Plaintiff filed a surreply in opposition to the Motion, (*see* Doc. 77). For the reasons explained herein, **Defendants' Supplemental Motion for Summary Judgment (Doc. 69)** is **GRANTED IN PART** and **DENIED IN PART**.

1

JURY

I.  BACKGROUND[1]

West Feliciana Parish Hospital ("Hospital") provides certain medical services to the public through its Intensive Outpatient Care Program ("IOP").[2] At the time of the events giving rise to this lawsuit, Life Phases Consulting, LLC – a private company that was owned by Sherry Banks ("Banks") and Jill Elias ("Elias") – oversaw the operations of the IOP. On July 16, 2013, Plaintiff was hired as the IOP's Program Director.

Throughout the course of her employment as the IOP's Program Director, Plaintiff became aware of various workplace practices that allegedly violated state law. First, Plaintiff alleges that she observed Elias affix the name of Lynn Goudeaux ("Goudeaux"), a therapist, to a patient's progress report; Plaintiff asserts that Elias *forged* Goudeaux's signature so that the document appeared to have been signed by Goudeaux. Plaintiff subsequently reported the alleged forgery to the Louisiana State Board of Social Work Examiners. Second, Plaintiff alleges that Defendants engaged in a practice of entering initial billing codes that misrepresented the length of therapy sessions, thereby charging Medicaid and other medical assistance programs for therapy services that were not actually rendered to patients, which Plaintiff reported to the Federal Bureau of Investigation ("FBI"). (*See* Doc. 29-2 at pp. 26-34; *id.* at p.

---

[1] Because this Motion supplements Defendants' Motion for Summary Judgment (Doc. 25), this Section is derived in large part from the Court's prior Ruling and Order (Doc. 68) on that Motion. The parties agreed on certain undisputed facts contained herein. *Compare* Doc. 25-1 (outlining facts that Defendants assert as undisputed), *with* Doc. 29-1 (outlining facts that Plaintiff asserts as undisputed). All other facts recounted in this Section are derived from the exhibits submitted by the parties and are accompanied by corresponding record citations.

[2] The Hospital falls within the authority of the Hospital Service District of West Feliciana Parish, Louisiana. *See* W. Feliciana Par. Code § 16-41.

2

61, ll. 3-8). Third, when Plaintiff confronted Elias regarding the possible abuse of an adult at a care facility and sought guidance from Elias regarding Plaintiff's mandatory duty to report such abuse under state law, Elias allegedly said that "she didn't think that it was a good idea for [Plaintiff] to report" the abuse because the Hospital had "just repaired [its] relationship[]" with the management of the facility at which the alleged abuse occurred. (Doc. 29-2 at p. 41, ll. 12-15). Plaintiff informed Banks, Elias, and Chastant on multiple occasions that she opposed these practices and alleged violations of state law. (*Id.* at p. 31, ll. 8-12). On July 3, 2014, Plaintiff informed the Hospital's Compliance Committee in writing of the workplace practices that she alleged violated state law. (*See* Doc. 29-3 at p. 21). Plaintiff also consulted state and federal authorities regarding the alleged violations of state law. (*See* Doc. 72-2 at p. 55, ll. 7-9; *id.* at p. 67, ll. 7-11; *id.* at p. 68, ll. 8-9; *id.* at p. 69, ll. 3-16).

On August 22, 2014, the Hospital's Compliance Officer – Janay Perkins ("Perkins") – observed a man whom she did not recognize in Plaintiff's office.[3] Perkins also observed Plaintiff utilize her office printer to print paperwork and later observed the man holding papers in his hand. (*See* Doc. 25-4 at p. 10, ll. 10-11). Perkins demanded that Plaintiff inform her of the identity of the man and the contents of the papers, but Plaintiff declined to provide Perkins with such information. After this incident, Plaintiff was placed on administrative leave, pending an investigation into whether Plaintiff had committed a violation of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") by conveying the paperwork to the unidentified

---

[3] Melvin Young, then a member of the West Feliciana Parish Council, was having a conversation with Plaintiff in her office. Doc. 29-2 at p. 50, ll. 6-7.

man. Plaintiff then was terminated on October 23, 2014, after receiving a Separation Notice from Chastant. Plaintiff asserts that she was terminated because she opposed and reported – and engaged in protected speech regarding – the workplace practices that she alleges amounted to violations of state law.

II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record [–] including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, [and] interrogatory answers" – or by averring that an adverse party cannot produce admissible evidence to support the presence of a genuine dispute. Fed. R. Civ. P. 56(c)(1).

"[W]hen a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks and footnote omitted). "This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (internal quotation marks and citations omitted). In determining

4

whether the movant is entitled to summary judgment, the Court "view[s] facts in the light most favorable to the non-movant and draw[s] all reasonable inferences in her favor." *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

In sum, summary judgment is appropriate if, "after adequate time for discovery and upon motion, [the non-movant] fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III. DISCUSSION

Defendants assert that they are entitled to summary judgment (1) on Plaintiff's claim under Louisiana Revised Statutes section 23:967 ("Louisiana Whistleblower Statute") because Plaintiff cannot establish that she had knowledge of and reported or opposed an actual violation of state law, as required by the statute, and (2) on Plaintiff's First Amendment retaliation claim under 42 U.S.C. § 1983 because Plaintiff's speech did not involve a matter of public concern. For the reasons discussed herein, the Court finds that Defendants are entitled to summary judgment on Plaintiff's remaining claim under the Louisiana Whistleblower Statute, but summary judgment is not appropriate on Plaintiff's First Amendment retaliation claim.

### A. State-Law Whistleblower Claim

For purposes of this Motion, Plaintiff alleges that she "disclosed and provided information of Chastant, Elias, and/or Banks' failure to report and disclose patient abuse as well as their effort to obstruct the procedures for reporting and investigating abuse." (Doc. 72 at p. 5). Defendants assert that they are entitled to summary judgment on Plaintiff's state-law whistleblower claim because Plaintiff cannot demonstrate that Defendants engaged in conduct that *actually* violated Louisiana law. As more fully described below, Plaintiff "fails to make a showing sufficient to establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial," and Defendants thus are entitled to summary judgment on her remaining state-law whistleblower claim. *Celotex*, 477 U.S. at 322.

The Louisiana Whistleblower Statute provides that:

> An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of the law: (1) [d]iscloses or threatens to disclose a workplace act or practice that is in violation of state law[;] (2) [p]rovides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of the law[; or] (3) [o]bjects to or refuses to participate in an employment act or practice that is in violation of law.

La. Rev. Stat. § 23:967(A). In order to state a claim under the Louisiana Whistleblower Statute, the Louisiana Supreme Court has held that a plaintiff "must establish that the employer engaged in workplace conduct constituting an *actual* violation of state law." *Encalarde v. New Orleans Ctr. for Creative Arts/Riverfront*, 2014-2430 (La. 2/13/15); 158 So. 3d 826 (mem.) (emphasis added) (citing *Accardo v.*

*La. Health Servs. & Indem. Co.*, 2005-2377 (La. App. 1 Cir. 6/21/06); 943 So. 2d 381; *Hale v. Touro Infirmary*, 2004-0003 (La. App. 4 Cir. 11/3/04); 886 So. 2d 1210).

"[T]he [Louisiana] Whistleblower Statute only offers protection to a specific class of employees: those employees who face 'reprisals' from their employers based solely upon an employee's *knowledge* of an illegal workplace practice and his refusal to participate in the practice or intention to report it." *Hale*, 2004-0003 at p. 9; 886 So. 2d at 1215. In order to state a prima facie claim under the Louisiana Whistleblower Statute, Plaintiff therefore must establish that she possessed the *knowledge* that a certain workplace practice amounted to a violation of state law *at the time* she refused to participate in the practice or informed the employer of her intention to report the practice to the authorities. *See id.*

Pursuant to Louisiana Revised Statutes section 14:403.2, it a crime for "[a]ny person [to] knowingly or willfully obstruct[] the procedures for receiving and investigating reports of adult abuse or neglect." La. Rev. Stat. § 14:403.2(B). The statute also makes it a crime for any person who is "required [by statute] to report the abuse or neglect of an adult" to "knowingly and willfully fail[]" to report such abuse, *id.* § 14:403.2(A), and for any person to "retaliate[] against an individual who reports adult abuse to an adult protection agency or to a law enforcement agency," *id.* at § 14:403.2(D)(1).

Plaintiff cannot establish that she had the requisite knowledge of either the alleged failure of Elias to report possible elder abuse under Louisiana Revised Statutes section 14:403.2(A) or the alleged retaliation against Plaintiff for reporting

7

possible elder abuse under Louisiana Revised Statutes section 14:403.2(D)(1). Plaintiff's letter to the Hospital's Compliance Committee demonstrates that, at the time that Plaintiff informed her employer that she intended to report violations of state law, she had knowledge of three suspected violations: "Medicare/Medicaid [b]illing" fraud, "[f]orgery of a therapist['s] signature," and "[i]ntimidation [regarding Plaintiff's] [r]eporting [p]otential [c]lient abuse." (Doc. 72-2 at p. 83). The letter does *not* indicate that Plaintiff had knowledge of Elias's alleged failure to discharge her duty under state law to report to state authorities the possible abuse of an elder, nor does the letter indicate that Plaintiff was "[d]isclos[ing] or . . . [o]bject[ing] to" that alleged failure. La. Rev. Stat. § 23:967(A). The letter also does *not* indicate that Plaintiff had knowledge of Elias's or Banks's alleged retaliation against Plaintiff for her reporting the possible elder abuse to state authorities. The letter generally states that Elias and Banks were "pick[ing] on and harass[ing]" Plaintiff, but the letter does not evince any knowledge on the Plaintiff's part that she was being "picked on and harassed" by Elias and Banks *because of* her reporting the possible elder abuse to state authorities. (*Id.*) In fact, the letter makes *no* mention of Plaintiff actually "report[ing] adult abuse to an adult protection agency or to a law enforcement agency." *Id.* at § 14:403.2(D)(1). (*Id.*) Therefore, Plaintiff did not have the requisite knowledge of either the alleged failure of Elias to report possible elder abuse under Louisiana Revised Statutes section 14:403.2(A) or the alleged retaliation against Plaintiff for reporting possible elder abuse under Louisiana Revised Statutes section

14:403.2(D)(1) to state a claim under the Louisiana Whistleblower Statute. *See Hale*, 2004-0003 at p. 9; 886 So. 2d at 1215.

Further, while Plaintiff *did* have knowledge of Defendants' alleged "[i]ntimidation [regarding Plaintiff's] [r]eporting [p]otential [c]lient abuse" in violation of Louisiana Revised Statutes section 14:403.2(B), Plaintiff cannot demonstrate that an actual violation of the law occurred. (*Id.*). Plaintiff allegedly took contemporaneous notes regarding the statements, which Plaintiff construes as "intimidation," that Elias made to her. (*See* Doc. 72-2 at p. 133). After Plaintiff informed Elias about the possible abuse of an elder that may have occurred at a facility with which Defendants contracted, according to Plaintiff's notes, Elias allegedly stated: "We have to be careful[. W]e just repaired relationships with [the facility.]" (*Id.*) After Plaintiff reminded Elias of Plaintiff's obligation under state law to report suspected elder abuse, Elias allegedly stated that perhaps they "should do investigations" about the possible abuse before reporting it because "mental health clients can say some crazy stuff." (*Id.*) Elias allegedly ended the conversation by telling Plaintiff to "think about things before [she] call[ed]" state authorities to report the alleged elder abuse. (*Id.*)[4] Elias's deposition testimony corroborates the general details of the conversation: Elias claims that she told Plaintiff that "it's important that we use clinical judgment" in determining whether to report possible elder abuse and that "we could have the nurse look at the patient." (*Id.* at p. 181, ll. 21-22).

---

[4] According to the notes, Chastant later told Plaintiff to "call him if [she] need[ed] a second opinion regarding ethics concerns." Doc. 72-2 at p. 133.

No reasonable jury could find that Elias's statements to Plaintiff – urging Plaintiff to "use clinical judgment," "be careful," and "think about things" before reporting possible elder abuse – amounted to a "knowing[] or willful[] obstruct[ion of] the procedures for receiving and investigating reports of adult abuse or neglect." La. Rev. Stat. § 14:403.2(B). Although there is a dearth of authority defining what conduct constitutes "knowing[] or willful[] obstruct[ion]" under Louisiana Revised Statutes section 14:403.2(B), Elias's statements cannot possibly rise to that level. *Id.* Elias merely instructed Plaintiff to be conscientious and pensive before reporting the possible elder abuse to state authorities. Without more, such as an indication that Elias used a particular tone of voice or inflected particular words, no reasonable jury could find that Elias's statements amounted to a "knowing[] or willful[] obstruct[ion of] the procedures for receiving and investigating reports of adult abuse or neglect." *Id.* Therefore, Plaintiff cannot prove that an "*actual* violation of state law" occurred during her conversation with Elias. *See Encalarde*, 2014-2430; 158 So. 3d 826 (emphasis added).

Thus, Plaintiff has "failed to make a showing sufficient to establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial": Plaintiff cannot demonstrate that she had the requisite knowledge of either the alleged failure of Elias to report possible elder abuse under Louisiana Revised Statutes section 14:403.2(A) or the alleged retaliation against Plaintiff for reporting possible elder abuse under Louisiana Revised Statutes section 14:403.2(D)(1), and Plaintiff cannot demonstrate that an actual violation of Louisiana

Revised Statutes section 14:403.2(B) occurred. *Celotex*, 477 U.S. at 322. Defendants therefore are entitled to summary judgment on Plaintiff's remaining claim under the Louisiana Whistleblower Statute. *See id.*

### B. First Amendment Retaliation Claim

Plaintiff alleges that she consulted state and federal authorities regarding the various workplace practices that she believed to be violations of state law. (*See* Doc. 72-2 at p. 55, ll. 7-9; *id.* at p. 67, ll. 7-11; *id.* at p. 68, ll. 8-9; *id.* at p. 69, ll. 3-16). Plaintiff premises her First Amendment retaliation claim on her interactions with state and local authorities. Defendants, however, argue that Plaintiff's speech during those interactions did not involve a matter of public concern and that, therefore, the Court should grant summary judgment on Plaintiff's First Amendment retaliation claim. As more fully described below, Defendants have failed to demonstrate that they are "entitled to judgment as a matter of law," however, and thus summary judgment is not appropriate. Fed. R. Civ. P. 56(a).

"To establish a [First Amendment] retaliation claim, plaintiffs must prove the following elements: '(1) the plaintiff suffered an adverse employment decision, (2) the plaintiff's speech involved a matter of public concern, (3) the plaintiff's interest in speaking outweighed the governmental defendant's interest in promoting efficiency, and (4) the protected speech motivated the defendant's conduct.'" *Juarez v. Aguilar*, 666 F.3d 325, 332 (5th Cir. 2011) (quoting *Kinney v. Weaver*, 367 F.3d 337, 356 (5th Cir. 2004)). "[F]or an employee's speech to qualify for First Amendment protection, he must be speaking 'as a *citizen* on a matter of public concern.'" *Nixon v. City of*

11

*Hous.*, 511 F.3d 494, 497 (5th Cir. 2007) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)). "An employee is not speaking as a citizen – but rather in his role as an employee – when he 'make[s] statements pursuant to [his] official duties,'" *id.* (quoting *Garcetti*, 547 U.S. at 421) (alteration in original), but "speaking on the subject matter of one's employment" is "not dispositive" of the issue of whether a public employee is speaking as a "citizen," *id.* at 498 (quoting *Williams v. Dall. Indep. Sch. Dist.*, 480 F.3d 689, 692 (5th Cir. 2007)). The United States Court of Appeals for the Fifth Circuit has held that an employee speaks as a citizen on a matter of public concern when his speech "relat[es] to official misconduct" and when he "voice[s] his complaints *externally* . . . ignor[ing] the normal chain of command in identifying problems with [the] operations" of his public employer. *Charles v. Grief*, 522 F.3d 508, 514 (5th Cir. 2008).

Plaintiff, in disclosing to federal and state authorities what she alleged to be violations of law that were occurring within Defendants' operations, spoke "as a *citizen* on a matter of public concern." *Garcetti*, 547 U.S. at 418. The content of her speech undoubtedly is a matter of public concern: Plaintiff alleged that various persons within Defendants' organization were violating state laws. *Charles*, 522 F.3d at 514. Further, although she initially raised her concerns regarding the alleged violations of law within Defendants' organizational structure, she eventually "ignore[d] the normal chain of command" and reported the alleged violations to various state and federal authorities, including the Louisiana State Board of Social

Work Examiners, (*see* Doc. 72-2 at pp. 138-39); the Louisiana Attorney General's Office, (*see id.* at p. 69, 3-11); and the FBI, (*see id.* at p. 69, ll. 69, ll.11-16).[5] *Id.*

Therefore, Plaintiff spoke "as a *citizen* on a matter of public concern" when she disclosed alleged violations of state law to agencies other than Defendants. *Garcetti*, 547 U.S. at 418. Defendants therefore are not entitled to summary judgment on Plaintiff's First Amendment retaliation claim because Defendants have failed to demonstrate that they are "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that **Defendants' Supplemental Motion for Summary Judgment (Doc. 69) is GRANTED IN PART** and **DENIED IN PART**. Summary judgment is **granted** on Plaintiff's claim under Louisiana Revised Statutes section 23:967, insofar as that claim is premised on a violation of Louisiana Revised Statutes section 14:403.2. Summary judgment is **denied** on Plaintiff's First Amendment retaliation claim under 42 U.S.C. § 1983.

**IT IS FURTHER ORDERED** that Plaintiff's claim under Louisiana Revised Statutes section 23:967, insofar as that claim is premised on a violation of Louisiana Revised Statutes section 14:403.2, is **DISMISSED WITH PREJUDICE**.

---

[5] It is unclear whether Plaintiff met with agents from the FBI *before* her termination. *See* Doc. 72-2 at p. 67, ll. 9-13. Because Plaintiff disclosed information regarding the alleged violations of state law to other state agencies, however, the precise timing of her meeting with the FBI does not impact the Court's ruling.

**IT IS FURTHER ORDERED** that a **jury trial** of the above-captioned matter shall be held on **November 6 – 9, 2017**, at 8:30 a.m. in Courtroom 2, Russell B. Long Federal Building & United States Courthouse, 777 Florida Street, Baton Rouge, Louisiana 70801.

Baton Rouge, Louisiana, this 28th day of September, 2017.

BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA